## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| In re: | |
| AFY, INC., | CASE NO.  10-40875 |
| Debtor, | Chapter 7 |
| ROBERT A. SEARS, ROBERT A SEARS, TRUSTEE, AND KORLEY B. SEARS, | |
| Plaintiffs, | |
| v. | Adv. Proc. 14-4060 |
| RHETT R. SEARS, RHETT R. SEARS REVOCABLE TRUST, RON H. SEARS, RONALD H. SEARS TRUST, AND DANE R. SEARS, | |
| Defendants. | |
| In re: | |
| KORLEY B. SEARS, | CASE NO. 10-40277 |
| Debtor, | Chapter 11 |
| ROBERT A. SEARS, ROBERT A SEARS, TRUSTEE, AND KORLEY B. SEARS, | |
| Plaintiffs, | |
| v. | Adv. Proc. 14-4061 |
| RHETT R. SEARS, RHETT R. SEARS REVOCABLE TRUST, RON H. SEARS, RONALD H. SEARS TRUST, AND DANE R. SEARS, | |
| Defendants. | |

| In re: | |
|---|---|
| ROBERT A. SEARS,<br><br>            Debtor, | CASE NO. 10-40275<br>Chapter 11 |
| ROBERT A. SEARS, ROBERT A SEARS,<br>TRUSTEE, AND KORLEY B. SEARS, | |
|             Plaintiffs, | |
| v. | Adv. Proc. 14-4062 |
| RHETT R. SEARS, RHETT R. SEARS<br>REVOCABLE TRUST, RON H. SEARS,<br>RONALD H. SEARS TRUST, AND DANE R.<br>SEARS,<br><br>            Defendants. | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ABSTENTION AND REMAND OF CIVIL ACTION TO MADISON COUNTY

Defendants, Rhett R. Sears, Rhett R. Sears Revocable Trust, Ron H. Sears, Ronald H. Sears Trust, and Dane R. Sears (collectively, the "Defendants"), submit the following opposition to the Motion for Abstention and Remand of Civil Action to Madison County (Doc. 25) (the "Motion to Abstain") filed by Plaintiffs, Robert A. Sears, Robert A. Sears, Trustee, and Korley B. Sears (collectively, the "Plaintiffs").

## INTRODUCTION

In a blatant attempt to forum shop, Plaintiffs request this Bankruptcy Court abstain from adjudicating the present adversary proceeding pursuant to 28 U.S.C. § 1334(c)(1) and equitably remand this case to the District Court of Madison County, Nebraska pursuant to 28 U.S.C. § 1452(b). However, as the U.S. District Court implicitly noted in its Memorandum and Order (Doc. 17, 24, p. 8), the applicable factors in determining whether to abstain and equitably remand a case fail to support the result that Defendants seek and, accordingly, the Motion to Abstain should be denied.

2

Plaintiffs filed the state court Complaint that forms the basis of this adversary proceeding after years of unsuccessfully making the same arguments in this Bankruptcy Court and other federal courts.  There are no new allegations in the state court Complaint, but instead, the claims repeat arguments that already have been made in, and rejected by, federal courts.  The state court Complaint is a blatant and transparent attempt by the Plaintiffs to collaterally attack federal court orders, with the hope of obtaining a different result.  The sole basis of the Complaint is Defendants' conduct in the bankruptcy cases of AFY, Inc. and Korley B. Sears and is centered on the allegations that Defendants "were the principal opponents of AFY, Robert and Korley in AFY's Chapter 11 case" and that "[t]hey acted in bad faith in AFY's case . . . all to the end that Robert and Korley would no longer operate AFY." (Doc. 1, Ex. A, ¶ 42).  A federal court is in the best position to decide Plaintiffs' claims, as the claims involve significant questions of bankruptcy law and are based on years of federal litigation, and remand raises a significant risk of inconsistent results between state and federal courts.  Based on an analysis of the applicable factors, this case should be fully adjudicated in federal court.

## FACTUAL BACKGROUND

The factual background regarding this adversary proceeding is well-known to this Bankruptcy Court.  The following is the comprehensive, up-to-date series of events:

1.      On February 2, 2010, Plaintiffs Korley B. Sears ("Korley") and Robert A. Sears ("Robert") filed Voluntary Petitions for Relief under Chapter 11 of the United States Bankruptcy Code in this Bankruptcy Court.  (Case No. 10-40277, Doc. 1) ("Korley's Bankruptcy"); (Case No. 10-40875, Doc. 1) ("Robert's Bankruptcy").

2.      On March 25, 2010, AFY, Inc. ("AFY") filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code in this Bankruptcy Court.  (Case No. 10-40875, Doc. 1) (the "AFY Bankruptcy").

3.      Korley's Bankruptcy, Robert's Bankruptcy, and the AFY Bankruptcy are collectively referred to herein as the "Bankruptcy Cases."

4.      Korley and Robert are shareholders of AFY.  (Case No. 10-40875, Doc. 1).  In fact, in the AFY Bankruptcy, Korley and Robert took the position that they are "the sole shareholders, officers, and directors of AFY."  *Sears v. Badami (In re AFY)*, 734 F.3d 810, 813 (8th Cir. 2013).

### Defendants' Proofs of Claim

5.      On April 27, 2010, approximately one month after AFY's petition date, Defendants filed the following proofs of claim in the AFY Bankruptcy:

| Claim No. | Claimant | Amount |
|---|---|---|
| 9 | Rhett R. Sears and Rhett Sears Revocable Trust | $2,196,683.06 |
| 8 | Ronald H. Sears Trust and Ronald H. Sears | $2,887,214.33 |
| 10 | Dane R. Sears | $241,393.77 |

(Proofs of Claim Nos. 8-10) (collectively, the "AFY Proofs of Claim").

6.      On March 29, 2010, Defendants filed proofs of claim in Korley's Bankruptcy that are essentially the same as the AFY Proofs of Claim but for accrued interest.  (*See* Proofs of Claim Nos. 2 – 5 in Case No. 10-40277) (collectively, the "Korley Proofs of Claim").

7.      Defendants based their AFY Proofs of Claim and Korley Proofs of Claim on a "June 20, 2007 Sears – AFY, Inc. Stock Sale Agreement" (the "Stock

Sale Agreement") executed by AFY and Korley, among others. (*See* Proofs of Claim Nos. 8-10 in Case No. 10-40875).

8.    The Stock Sale Agreement states that AFY and Korley were purchasing all of Defendants' interest in AFY. (*Id.*).

**A.    First Round in Federal Court:  Allowance of the AFY Proofs of Claim**

**Plaintiffs' Objections to Defendants' AFY Proofs of Claim**

9.    On March 17, 2011, Robert and Korley filed an Objection to Defendants' AFY Proofs of Claim. (Case No. 10-40875, Doc. 366). Robert and Korley's arguments included but were not limited to the following:

a.    The AFY Proofs of Claim are "unenforceable against AFY or its property" (*Id.*, p. 2);

b.    AFY did not sign a promissory note and was not obligated to Defendants under the Stock Sale Agreement (*Id.*, p. 3);

c.    Defendants "materially breached" their "implied duties of good faith and fair dealing" by opposing the efforts of AFY to effect a Chapter 11 plan and by collaborating with the Chapter 11 Trustee (*Id.*, pp. 2-4); and

d.    Defendants "materially breached the contract" by "opposing all efforts of AFY to effect a Chapter 11 plan" (*Id.*, p. 3).

10.    Defendants resisted Robert and Korley's Objection to the AFY Proofs of Claim. (Case No. 10-40875, Doc. 372).

**The Bankruptcy Court's Allowance of Defendants' AFY Proofs of Claim**

11.    This Court addressed Korley and Robert's arguments regarding Defendants' AFY Proofs of Claim in Doc. 493 in the AFY Bankruptcy, Case No. 10-40875, 2011 WL 2313154 (Bankr. D. Neb. June 8, 2011).

12.    First, this Court held that the Stock Sale Agreement is "clear and unambiguous" and that AFY is liable as a "Buyer" under the Stock Sale Agreement.

*Id.* at *4.   More specifically, this Court held that "[a]bsolutely no evidence was presented to support the theory that AFY is not liable for the purchase price."  *Id.* at *5.

13.   Second, in terms of Robert and Korley's claims based on Defendants' alleged post-petition conduct, this Court held that there was no evidence to support the assertion that Defendants had or breached any duty in failing to support Korley and Robert's bankruptcy efforts and instead supporting the efforts of AFY's Chapter 11 Trustee.  *Id.*

14.   This Court overruled Korley and Robert's Objection to Defendants' Proofs of Claim and allowed the AFY Proofs of Claim in their entirety.  *Id.*

### The BAP's Decision Affirming this Bankruptcy Court's Decision

15.   Korley and Robert appealed the allowance of Defendants' AFY Proofs of Claim to the Eighth Circuit Bankruptcy Appellate Panel ("BAP").  *In re AFY, Inc.*, 463 B.R. 483 (8th Cir. B.A.P. 2012).  The BAP affirmed this Court's decision in all respects.  *Id.*

16.   The BAP agreed that the Stock Sale Agreement is unambiguous and that AFY is liable underneath it as a "Buyer."  *Id.* at 489-90.

17.   The BAP considered Korley and Robert's argument that AFY was discharged from liability under the Stock Sale Agreement based on the Defendants' alleged breach of their implied duties of good faith and fair dealing and loyalty.  *Id.* at 490.  The BAP rejected these arguments, however, explaining that "it would defy logic to hold that a claimant would act in bad faith simply by trying to enforce his claim and assist a case trustee in procuring payment of it."  *Id.*

### The Eighth Circuit Court of Appeals' Decision Dismissing the Appeal

18.   Korley and Robert appealed the BAP's decision to the Eighth Circuit Court of Appeals.  *In re AFY, Inc.*, 733 F.3d 791 (8th Cir. 2013).

19.     The Eighth Circuit held that Korley and Robert lacked standing to appeal this Bankruptcy Court's Order.  *Id.* at at 793.

20.     The Eighth Circuit explained that AFY, "the only party directly and adversely affected by the bankruptcy court's order allowing" Defendants' AFY Proofs of Claim "is not a party to this appeal."  *Id.*  The Eighth Circuit further stated that any effect of this Court's Order on Korley and Robert was "indirect" based on their status as AFY shareholders and insufficient to grant Korley and Robert appellate standing. *Id.*

21.     The Eighth Circuit's ruling left this Bankruptcy Court's prior ruling fully in effect, operative, and final.  (Case No. 10-40277, Doc. 403, p. 1).

**B.     Second Round in Federal Court:  Allowance of Korley Proofs of Claims**

22.     Not dissuaded by the thorough rejection of their positions by the three separate federal courts outlined above, Plaintiffs decided to try again.  This time, however, the context was an objection to Defendants' proofs of claim filed in Korley's Bankruptcy.

**Korley's Objections to Defendants' Korley Proofs of Claim**

23.     On December 20, 2013, Korley filed "Objections" to the proofs of claim Defendants filed in Korley's Bankruptcy.  (Case No. 10-40277, Doc. 282) ("Korley's Objections").

24.     Korley's stated reasons for his Objections included the following:

a.      Korley argued that AFY is not liable under the Stock Sale Agreement (Case No. 10-40277, Doc. 339, pp. 8-9);

b.      Korley argued that Defendants materially breached their duties under the Stock Sale Agreement, including the express duty of loyalty and the implied duties of good faith and fair dealing (Case No. 10-40277, Doc. 403, p. 7);

    c.    Korley argued that the Stock Sale Agreement was not a binding contract because there was no "meeting of the minds" between Korley and the Defendants (Case No. 10-40277, Doc. 339, p. 6); and

    d.    Korley argued that the Stock Sale Agreement was an executory contract that has not been rejected (Case No. 10-40277, Doc. 403, p. 2).

25.    Defendants filed a resistance to Korley's Objections.  (Case No. 10-40277, Doc. 299).

**The Bankruptcy Court's Allowance of Defendants' Korley Proofs of Claim**

26.    On August 29, 2014, this Court entered its ruling on Korley's Objections, allowing Defendants' Korley Proofs of Claim in full.  (Case No. 10-40277, Doc. 403); *In re Sears*, 2014 WL 4346232 (Bankr. D. Neb. Aug. 29, 2014).

27.    First, as this Court explained, res judicata barred the re-litigation of Korley's Objections because the elements of res judiciata were met:

    a.    This Court's Order in the AFY Bankruptcy that overruled Korley and Robert's Objection to Defendants' AFY Proofs of Claim was a final order. *Id.* at *2.  This Court had subject-matter jurisdiction over Korley and Robert's Objection because any party-in-interest may object to claims under 11 U.S.C. § 502 and Korley and Robert's "lack of standing to appeal is entirely separate from their standing to file" the Objection to the AFY Proofs of Claim.  *Id.*

    b.    This Court also found that the defenses Korley raised in the Objections were no different than those raised in the AFY Bankruptcy.  *Id.* at *3.  "Old wine in new bottles – in the form of a new theory of recovery or a new body of law allegedly violated," does not avoid res judicata.  *Id.*

28.    Second, this Court explained that Korley's executory contract theory was unsuccessful, as the Stock Sale Agreement is not executory.  *Id.*

29.     This Court granted Defendants summary judgment, despite Korley's "creative obfuscation to try to avoid his liability," as there were no genuine issues of material fact as to Korley's liability or the amount owed to Defendants.  *Id.* at *4.

### Korley's Appeal to the U.S. District Court

30.     On September 11, 2014, Korley appealed this Bankruptcy Court's decision to the U.S. District Court for the District of Nebraska, presumably because the BAP has already rejected his arguments in the context of the AFY case.  *See* (Case No. 10-40277, Docs. 411, 413).

31.     On August 25, 2015, the U.S. District Court entered an Order affirming this Bankruptcy Court's decision.  (U.S. District Court for Nebraska, Case No. 4:14-cv-03206, Doc. Nos. 13-15).

32.     On September 21, 2015, Korley filed a Notice of Appeal to the Eighth Circuit.  (*Id.*, Doc. 15).

**C.     Third Round in Federal Court:  Korley and Robert Lose Control over AFY, Inc.**

33.     Many of the allegations in Plaintiffs' Complaint filed in the District Court of Madison County, Nebraska, as well as the allegations in the Objection to the AFY Proofs of Claim and Korley's Objections, relate to activity that was taken by the Defendants in AFY's Bankruptcy.  (Doc. 1, Ex. A).  The following provides a brief summary of such activity, which this Court already has addressed on multiple occasions.

### Appointment of a Chapter 11 Trustee in the AFY Bankruptcy

34.     On April 16, 2010, in the AFY Bankruptcy, Defendants filed a motion to appoint a Chapter 11 trustee.  (Case No. 10-40875, Doc. 30) (the "Motion to Appoint").

35.     Robert and Korley objected to the Motion to Appoint on multiple grounds.  (Case No. 10-40875, Doc. 36).

36.     On April 29, 2010, this Bankruptcy Court granted the Motion to Appoint after a trial and the order was not appealed by any party.  (Case No. 10-40875, Doc. 81).

37.     Thereafter, Defendants filed a motion requesting reimbursement from the AFY bankruptcy estate for the legal fees that they incurred in filing and prosecuting the Motion to Appoint under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4).  (Case No. 10-40875, Doc. 152) (the "Motion for Reimbursement").

38.     Robert objected to the Motion for Reimbursement.  (Case No. 10-40875, Doc. 178).

39.     This Court granted Defendants' Motion for Reimbursement and authorized the payment of attorney fees incurred by Defendants in seeking and obtaining the appointment of the AFY Trustee because Defendants' actions amounted to a "substantial contribution" to AFY's bankruptcy estate.  (Case No. 10-40875, Docs. 202, 210).  This order was not appealed by any party.

### Conversion of AFY's Bankruptcy to Chapter 7

40.     On July 19, 2010, AFY's Trustee filed a motion to convert the AFY case to Chapter 7.  (Case No. 10-40875, Doc. 207) (the "Motion to Convert").

41.     Korley and Robert filed an objection to the Motion to Convert.  (Case No. 10-40875, Doc. 224).

42.     On September 2, 2010, this Court entered an order granting the Motion to Convert, converting AFY's Chapter 11 case to Chapter 7.  (Case No. 10-40875, Doc. 242) (the "Conversion Order").  Robert and Korley appealed the Conversion Order without success.  *See In re AFY, Inc.*, 734 F.3d 810 (8th Cir. 2013).

**D.**   **Fourth Round in Federal Court:  Distributions from AFY's Estate**

43.   Plaintiffs' Complaint also makes a series of allegations regarding Court-approved distributions that have been made to Defendants by the AFY Trustee based on Defendants' AFY Proofs of Claim and requests restitution of such Court-approved distributions.  Essentially, claim no. 3 of Plaintiffs' Complaint seeks to undo the distributions approved by this Court.

**The Bankruptcy Court's Decision Granting Trustee's Distribution Motion**

44.   On January 31, 2014, the AFY Trustee filed a motion to approve interim payments to Defendants and other unsecured creditors based on their allowed claims.  (Case No. 10-40875, Doc. 681) (the "Distribution Motion").  The payments totaled $3 million of the $4.5 million held in AFY's bankruptcy estate.  (*Id.*).

45.   The Distribution Motion requested approval to pay Defendants the following interim payment amounts:

a.   Ron H. Sears Trust and Ronald H. Sears in the amount of $1,389,912.913

b.   Rhett R. Sears and Rhett Sears Revocable Trust in the amount of $1,057,489.27

c.   Dane R. Sears in the amount of $116,207.63

 (*Id.,* p. 3).

46.   Plaintiffs objected to the Distribution Motion.  (Case No. 10-40875, Doc. 679).

47.   On April 23, 2014, the Bankruptcy Court granted the Distribution Motion, subject to the condition that no distribution be made unless the U.S. Supreme Court denied Plaintiffs' petition for a writ of certiorari.  (Case No. 10-40875, Doc. 689).  This order was not appealed by any party.

48.     The U.S. Supreme Court denied Plaintiffs' petition for a writ of certiorari.  (Case No. 10-40875, Docs. 692, 693).

49.     Accordingly, the AFY Trustee made the authorized distributions to creditors, including Defendants.  (Case No. 10-40875. Docs. 689, 690).

50.     On May 19, 2015, the AFY Trustee filed the Trustee's Final Report in which the AFY Trustee proposed distributions to Defendants in the following amounts:

| | |
|---|---|
| Ron H. Sears Trust and Ronald H. Sears | $444,420.34 |
| Rhett R. Sears and Rhett Sears Revocable Trust | $338,128.91 |
| Dane R. Sears | $37,157.03 |

51.     No party objected to the Trustee's Final Report, and the AFY Trustee made the proposed distributions.

## PLAINTIFFS' STATE COURT COMPLAINT & DEFENDANTS' REMOVAL TO THIS COURT

52.     Not deterred by any of the foregoing federal proceedings, on October 20, 2014, Plaintiffs moved their arguments against Defendants to Nebraska state court, filing a Complaint against Defendants in the District Court of Madison County, Nebraska.  (Doc. 1, Ex. A).

### Plaintiffs' State Court Complaint

53.     The following is a summary of the Complaint's claims against Defendants.  If most or all of the allegations sound familiar, it is because this Court already has heard them all:

    a.     Breach of Contract:  Plaintiffs allege that:

    i.     The Stock Sale Agreement does not impose liability on AFY to the Defendants;

    ii.     Defendants repudiated the Stock Sale Agreement by contending that AFY is liable to them under it;

iii.     Defendants promised that AFY would not be liable under the Stock Sale Agreement unless AFY signed promissory notes, and "but for" such promises, Robert and Korley would not have entered into the Stock Sale Agreement;

iv.     Defendants materially breached their duty of "good faith and fair dealing" by –

(1)     making the "bogus" claim in AFY's Bankruptcy that they were entitled to call a meeting of shareholders, calling such meeting, and ousting Robert and Korley as officers and directors;

(2)     obtaining the appointment of the Chapter 11 Trustee in AFY's Bankruptcy;

(3)     filing the "bogus" AFY Proofs of Claim;

(4)     inducing the Chapter 11 Trustee to not object to the "bogus" AFY Proofs of Claim;

(5)     receiving money from the AFY bankruptcy estate that "but for the bogus claims" would have been received by Robert and Korley as AFY stockholders; and

(6)     failing to keep the promises of Ron and Dane to be loyal to AFY and its management; and

v.     "But for" Defendants' breaches of the Stock Sale Agreement, Plaintiffs claim that they would have "successfully reorganized AFY" and that Defendants' breaches were a proximate cause of the loss of value to Robert and Korley of their stock in AFY.

(Doc. 1, Ex. A, ¶¶ 43-52).

b.    Breaches of Fiduciary Duty:  Plaintiffs allege that Ron and Dane owed fiduciary duties to AFY "and its management," including the duty of loyalty, and that Ron and Dane breached such fiduciary duties by knowingly putting their own interests first, not being trustworthy, and not being forthcoming with information.  Plaintiffs claim that Rhett knowingly participated in and aided and abetted Ron and Dane's breaches of their fiduciary duty. Plaintiffs claim these breaches caused Robert and Korley damage in the form of loss of the value of their AFY stock, the loss of $2.5 million distributed to Defendants from the AFY bankruptcy estate, and the loss of attorney fees paid to counsel for the Chapter 11 Trustee, among other items.  (*Id.*, ¶¶ 53-58).

c.    Restitution:   Plaintiffs allege that when the Stock Sale Agreement was signed, there was no "meeting of the minds" as to whether the Stock Sale Agreement imposed liability on AFY.   Plaintiffs allege that there are no grounds to enforce the AFY Proofs of Claim, that Defendants wrongfully caused the Chapter 11 case to be converted to Chapter 7, and AFY's assets to be liquidated.

i.    Plaintiffs claim that the distributions that Defendants received from the AFY bankruptcy estate "were wrongly diverted" from Robert and Korley and that Defendants have been unjustly enriched by receiving such distributions.

ii.    Plaintiffs argue that "[u]nder the law of unjust enrichment," Defendants are obligated to make restitution to Robert and Korley of all distributions they received from the AFY estate.

(*Id.*, ¶¶ 59-71).

d.   <u>Conspiracy and Tortious Interference</u>:   Plaintiffs allege that Defendants, "[a]cting with malice, conspired with each other and acted in concert to unjustifiably interfere with the business expectancies of Robert and Korley," and with the business expectancies of AFY.  Plaintiffs claim that such tortious interference was "continuous starting in 2010 and never ending through 2014," which necessarily means that all actions of Defendants of which Plaintiffs complain occurred during the Bankruptcy Cases.  (*Id.*, ¶¶ 72-75).

e.   <u>Abuse of Process</u>:   Plaintiffs claim that Defendants committed abuse of process in connection with AFY's Bankruptcy, including by claiming to be creditors of AFY, by obtaining the appointment of the Chapter 11 Trustee, and orchestrating a conversion to Chapter 7.  Plaintiffs claim the Stock Sale Agreement was an "executory contract" as of AFY's petition date and Defendants are therefore not AFY creditors.  (*Id.*, ¶¶ 76-87).

## Defendants' Removal of State Court Complaint to Bankruptcy Court

54.   On November 24, 2014, Defendants timely removed Plaintiffs' Complaint to this Court.  (Doc. 1).

55.   On December 1, 2014, Defendants filed three motions, a Motion to Dismiss Complaint, a Motion for Sanctions, and a Motion to Consolidate.

## Bankruptcy Court's Remand Order

56.   On December 11, 2014, this Bankruptcy Court entered an Order in which it noted that "the matters at bar have been in litigation in one form of the other ever since" 2010.  (Doc. 14).  This Court found that Plaintiffs' causes of action are not "sufficiently inherent to the bankruptcy that they could be considered core proceedings" and decided to permissively abstain from adjudication under 28 U.S.C.

§ 1334(c)(1) and remanded the case under 28 U.S.C. § 1452(b). (Doc. 14) (the "Remand Order").

57.    Defendants appealed the Remand Order to the U.S. District Court for the District of Nebraska.

### U.S. District Court's Order on Appeal

58.    On September 29, 2015, the U.S. District Court reversed the Remand Order and remanded the case to this Court, stating that Defendants "have presented a convincing argument (discussing each of the factors identified in the bankruptcy court's order) as to why [Plaintiffs'] action does not belong in state court. (Doc. 17, 24).

### Plaintiffs' Motion to Abstain

59.    On October 1, 2015, Plaintiffs filed the Motion to Abstain, asking this Court to abstain from hearing the adversary proceedings under the permissive abstention of doctrine of 28 U.S.C. § 1334(c)(1) and to equitably remand the case to state court pursuant to 28 U.S.C. § 1452(b).  (Doc. 25).

60.    Along with filing this Opposition, Defendants have filed a Motion to Stay, asking this Bankruptcy Court to stay this adversary proceeding, including staying a determination of Plaintiffs' Motion to Abstain, based on Korley's ongoing appeal to the Eighth Circuit Court of Appeals.

### ARGUMENT

The law does not support permissive abstention or equitable remand of this case.  As an initial matter, Plaintiffs' claims, despite their state-law labels, present this Bankruptcy Court with a core proceeding.  The claims are solely based on Defendants' previous conduct in this Bankruptcy Court.  But for the Bankruptcy Cases, Plaintiffs' claims would not exist, and therefore, the claims are "arising in" title 11 pursuant to § 1334(b).  Further, the factors that are examined when deciding

whether to permissively abstain from or equitably remand a case weigh heavily against abstention and remand.  In total, there are 16 relevant factors (12 permissive abstention factors and 4 equitably remand factors) to be considered in deciding the Motion to Abstain.  Of the 16 factors, 15 weigh against abstention and remand.  The only remaining factor is neutral.  Accordingly, federal court is the proper forum for Plaintiffs' claims.

## I.   THE CLAIMS SET FORTH IN THE STATE COURT COMPLAINT PRESENT A CORE PROCEEDING AS THE CLAIMS ARE "ARISING IN" A CASE UNDER TITLE 11.

"Core proceedings are those cases arising under title 11 or arising in a case under title 11."  *In Re Schmidt*, 453 B.R. 346, 350 (8th Cir. B.A.P. 2011) (citing *In re Farmland*, 567 F.3d 1010, 1017 (8th Cir. 2009); 28 U.S.C. § 157(b)(1)).  The phrase "arising under" applies to proceedings that would not exist if there were no bankruptcy, such as causes of action to recover fraudulent conveyances and preferential transfers, dischargeability proceedings, and similar matters.  *Id.*  "The phrase 'arising in' generally refers to matters that, although not expressly created by title 11, would have no existence but for the fact that a bankruptcy case was filed."  *Id.*  A non-exhaustive list of examples of core proceedings are identified in 28 U.S.C. § 157(b)(2).  *See id.* at 349.

Although the claims in the Complaint purportedly arise under state law, the claims are entirely based on what occurred during the Bankruptcy Cases and "would have no existence but for the fact" that the Bankruptcy Cases were filed, particularly the AFY Bankruptcy.  The claims are therefore "arising in" title 11 and are core proceedings.  *See Schmidt*, 453 B.R. at 349-50 (stating "core proceedings are those cases arising under title 11, or arising in a case under title 11" and include, but are not limited to, the sixteen examples of types of matters listed in 28 U.S.C. § 157(b)(2), which includes matters concerning the administration of the estate (§

17

157(b)(2)(A)), the allowance of claims against the estate (§ 157(b)(2)(B)), and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or equity relationship (§ 157(b)(2)(O)).

A.     **The State Court Complaint Is an Attempt by Plaintiffs to Collaterally Attack Orders Entered by Federal Courts in a Series of Core Proceedings.**

The matters in the Complaint "have been in litigation in one form or another" since 2010 and this Bankruptcy Court has already ruled that AFY and Korley owe Defendants more than $5 million dollars.  (Doc. 14, p. 1).  Notwithstanding those rulings, Plaintiffs filed the Complaint in state court, repeating allegations that already have been rejected in federal courts on numerous occasions.  *See id.*

A review of the Complaint demonstrates that Plaintiffs filed it as a way to collaterally attack orders entered by federal courts in the AFY Bankruptcy and Korley Bankruptcy.  Of course, such tactics are prohibited.  *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (stating that the respondents "cannot be permitted to" "collaterally attack" a Florida bankruptcy court's order in federal district court in Texas "without seriously undercutting the orderly process of the law.").   The allegations of the Complaint are based on the following matters that are already the subject of federal court orders:

- The validity of Defendants' proofs of claim in the AFY Bankruptcy and Korley's Bankruptcy.  *See* (Case No. 10-40875, Docs. 493 & 569); (Case No. 10-40277, Doc. 403);

- The appointment of a Chapter 11 Trustee in the AFY Bankruptcy.  *See* (Case No. 10-40875, Doc. 81);

- The conversion of the AFY Bankruptcy to Chapter 7.  *See* (Case No. 10-40875, Doc. 224); and

- The distribution of AFY estate proceeds to Defendants.  *See* (Case No.

18

10-40875, Case No. 689).

*See* (Doc. 1, Ex. A, ¶¶ 40-42, 47-52, 58, 60-71, 73-75, 77-87).

It is well settled that each of the foregoing matters on which the Complaint is based is a core proceeding.  First, the validity of Defendants' AFY Proofs of Claim and Korley Proofs of Claim are core proceedings.  (Doc. 14, p. 2) (citing 28 U.S.C. § 157(b)(2)(B)).  Second, the question of whether to appoint a Chapter 11 trustee is a core proceeding.  *See In re Ngan Gung Restaurant, Inc.*, 195 B.R. 593, 597 n.3 (S.D.N.Y. 1996) (stating "a motion for the appointment of a trustee is a core proceeding").  Third, the issue of whether to convert a Chapter 11 case to Chapter 7 is a core proceeding.  *See In re Coffee Cupboard, Inc.*, 118 B.R. 197, 200 (Bankr. E.D.N.Y. 1990) (stating the issue of converting a debtor's case from Chapter 11 to Chapter 7 is a core proceeding).  *See also In re Stokes*, Case No. 09-60265-11, 2009 WL 3062314, *2 (Bankr. D. Mon. Sept. 21, 2009); 28 U.S.C. § 157(b)(2)(A), (O).  Fourth, disputes over the distribution of bankruptcy estate assets are core proceedings involving administration of the bankruptcy estate under 28 U.S.C. § 157(b)(2)(A).  *See Erilane v. Thompson (In re Diamond Bar Estates No. 10)*, 87 F.3d 1318, 1996 WL 340778, *2-3 (9th Cir. 1996) (unreported) (stating "[m]atters involving administration of the estate, or proceedings affecting liquidation of the estate assets are core proceedings.")  Plaintiffs are seeking to undo the results reached in each of these core proceedings through the Complaint in state court.  As the Supreme Court has stated, such efforts seriously undercut the orderly process of law and are not permitted.  *See Celotex*, 514 U.S. at 313.

**B.   Plaintiffs' State Law Labels Do Not Transform the Arguments Plaintiffs Already Made in Core Proceedings Into Non-Core Matters.**

Plaintiffs have labeled the claims in their Complaint as breach of contract, breach of fiduciary duty, restitution, conspiracy and tortious interference with

19

business expectancies, and abuse of process.   (Doc. 1, Ex. A).  These labels, however, do not render the claims non-core proceedings.  Rather, the allegations and claims in the Complaint are based solely on actions that Defendants have taken in the Bankruptcy Cases and are an attempt to attack the results that have been reached by federal courts in the AFY Bankruptcy and Korley Bankruptcy.  The claims are core proceedings under § 1334(b) as they are "arising in" the Bankruptcy Cases.

If it were not for the Bankruptcy Cases, the claims in the Complaint would not exist.  Courts have consistently held that a proceeding "'arises in'" bankruptcy if it has "'no existence outside of bankruptcy.'"  *Farmland*, 567 F.3d at 1018 (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)).  Here, none of the claims exist outside of bankruptcy as Plaintiffs have no basis for any of the allegations made against Defendants absent Defendants' participation in the Bankruptcy Cases.  The sole bases for the claims in the Complaint are actions taken by the Defendants post-petition, during the course of the Bankruptcy Cases.

Additionally, the claims qualify as core proceedings under 28 U.S.C. §§ 157(b)(2)(A) and (O).  The claims relate to the administration of the AFY bankruptcy estate, as Plaintiffs are asking a state court to undo the Bankruptcy Court's orders that approved distributions to Defendants under their AFY Proofs of Claim by ordering that Defendants return all of the distributions they have received based on the allowance of their AFY Proofs of Claim, which were found to be valid by the Bankruptcy Court.  Any state court order that requires Defendants to return any portion of their distributions approved by the Bankruptcy Court will affect the administration of the AFY bankruptcy estate.  *See* 28 U.S.C. § 157(b)(2)(A). Certainly, the proceeding initiated by the Complaint, which seeks to undo millions of dollars in distributions and the allowance of the AFY Proofs of Claim and Korley

Proofs of Claim, affects the liquidation of the assets of the bankruptcy estates.  *See*

28 U.S.C. § 157(b)(2)(O).

### C.    Claims Based on Post-Petition Conduct Taken in a Bankruptcy Proceeding Fall Within the "Arising In" Jurisdiction of § 1334(b).

Courts have held that when a plaintiff files claims based solely on a

defendant's post-petition conduct in a bankruptcy proceeding, like the Plaintiffs have

done in this instance, the claims are "arising in" title 11 for purposes of § 1334(b).

*See In re Repository Technologies, Inc*, 601 F.3d 710, 720 (7th Cir. 2010) (holding

that an amended complaint based on state-law theories of recovery, including civil

conspiracy and tortious interference, fell within "arising in" jurisdiction because the

state-law theories focused on the bankruptcy action and conduct within it).    In

*Repository*, the parties had "been on a litigation death march" for years, passing

through bankruptcy court, federal district court, and state court before arriving in the

Seventh Circuit.  *Id.* at 713-14.  An individual that was a director and shareholder of

the Chapter 11 debtor filed suit against the debtor's attorneys in state court, alleging

that the defendants had conspired with the debtor's shareholders to use the Chapter

11 filing as a way to enrich themselves, that they tortiously interfered with the

debtor's loan contract with the plaintiff, and that they abused the bankruptcy process.

*Id.* at 716.  The defendants removed the action to federal court.  *Id.*  In an attempt to

try and avoid federal jurisdiction, the plaintiff deleted the abuse of process claim from

his complaint and moved to have the case remanded.  *Id.*  The district court "was

unimpressed" with the plaintiff's attempt to avoid federal jurisdiction by deleting the

abuse of process claim, because even the civil conspiracy and tortious interference

claims revolved around the assertion that the defendants had abused the bankruptcy

process.  *Id.* at 720.

On appeal, the Seventh Circuit agreed that the federal court had "arising in"

jurisdiction over the abuse of process claim.  *Id.* at 720.  The allegations of the

complaint made it clear that the plaintiff's "claims arise out of the defendants'
conduct" in the bankruptcy case and "[b]ecause such claims could not have been the
subject of a lawsuit absent the filing of a bankruptcy case," the district court had
"arising in" jurisdiction. *Id.* at 720.

Here, the Defendants also have asserted an abuse of process claim against
the Defendants based solely on Defendants' conduct in the AFY Bankruptcy. *See*
(Doc. 1, Ex. A, ¶¶ 76-87). As recognized in *Repository*, such an abuse of process
claim could not have been the subject of a lawsuit absent the AFY Bankruptcy.
*Repository*, 601 F.3d at 720. Therefore, "arising in" jurisdiction exists under §
1334(b). *See id.*

Further, all of the other claims in the Complaint, such as conspiracy, tortious
interference, and restitution, are "inextricably bound" to the abuse of process claim
and the acts complained of are not "separable from the bankruptcy context." *See id.*
at 725-26. Therefore, to the extent that these other claims do not themselves fall
under the Bankruptcy Court's "arising in" jurisdiction, the Bankruptcy Court
nevertheless has supplemental jurisdiction over the entire lawsuit because these
claims are so entangled with the abuse of process claim. *See id.* at 727 (holding that
the district court should have retained supplemental jurisdiction over the entire
lawsuit, including the civil conspiracy and tortious interference claims).

*In re Ortiz*, 665 F.3d 906 (7th Cir. 2011) provides another example of a court
finding that claims based solely on post-petition conduct taken in a bankruptcy case
are claims "arising in" title 11 under § 1334(b). In *Ortiz*, the link between the conduct
complained of and the bankruptcy cases was more attenuated than it is in this case.
*Ortiz* involved class action lawsuits brought against a medical provider that filed
proofs of claim in thousands of bankruptcy cases. *Id.* at 908. The plaintiffs/debtors
alleged that the proofs of claim were filed by the medical provider in violation of a

22

state law that allows individuals to sue if their health care records are disclosed without permission.  *Id.*

On appeal, the Seventh Circuit determined that the plaintiffs' claims "would have no existence outside of the bankruptcy" and are therefore deemed to be "arising in" title 11 "because the claims are predicated on the defendant's participation in the debtors' bankruptcies."  *Id.* at 912.  As the Seventh Circuit explained, "[b]ecause the debtors' claims arise in their bankruptcies, they are core matters," under title 11 and under § 157(b)(2).  *Id.*

Similarly, here, the claims in the state court Complaint are solely predicated on Defendants' participation in the AFY Bankruptcy and Korley's Bankruptcy.  *See* (Doc. 1, Ex. A).  The claims are therefore "arising in" title 11 and are core proceedings.  *See id.*

Federal courts have consistently held that state law claims based on post-petition conduct taken in a bankruptcy proceeding are core proceedings "arising in" title 11.  *See Schultze v. Chandler*, 765 F.3d 945, 948-49 (9th Cir. 2014) (collecting cases that provide that state law claims against court-appointed professionals based on conduct taken in bankruptcy cases are core proceedings).  Here, despite the state-law labels that Plaintiffs have placed on their claims, the claims are simply a way to collaterally attack the orders entered by federal courts during the course of core proceedings in the Bankruptcy Cases.  The claims are solely predicated on Defendants' conduct in the Bankruptcy Cases, and but for the Bankruptcy Cases, the claims would not exist.  The claims are therefore core proceedings "arising in" title 11.  28 U.S.C. § 1334(b).

## II.   PERMISSIVE ABSTENTION UNDER 28 U.S.C. § 1334(C)(1) IS NOT WARRANTED.

Section 1334(c)(1) states that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for

State law, from abstaining from hearing a particular proceeding arising under title 11

or arising in or related to a case under title 11."  28 U.S.C. § 1334(c)(1).  Section

1334(c)(1) permits a bankruptcy court to abstain from hearing a proceeding whether

it is core or non-core.  *In re Williams*, 256 B.R. 885, 893 (8th Cir. B.A.P. 2001).

In determining whether permissible abstention is warranted, courts follow the

general premise that "federal courts should exercise their jurisdiction if it is properly

conferred and that abstention is the exception rather than the rule."  *Williams*, 256

B.R. at 893-94.  *See also In re Portrait Corp. of America, Inc.*, 406 B.R. 637, 641

(S.D.N.Y. Bankr. 2009) ("Federal courts should be sparing in the exercise of

discretionary abstention.") (internal quotations omitted).

### A.   The Relevant Factors Do Not Weigh in Favor of Permissive Abstention.

Courts have identified twelve factors that may be considered in determining

whether permissive abstention is appropriate:  (1) the effect or lack thereof on the

efficient administration of the estate if a court recommends abstention; (2) the extent

to which state law issues predominate over bankruptcy issues; (3) the difficult or

unsettled nature of the applicable law; (4) the presence of a related proceeding

commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis,

if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of

the proceeding to the main bankruptcy case; (7) the substance rather than the form

of an asserted "core" proceeding; (8) the feasibility of severing state law claims from

core bankruptcy matters to allow judgments to be entered in state court with

enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's

docket; (10) the likelihood that the commencement of the proceeding involves forum

shopping by one of the parties; (11) the existence of a right to a jury trial; and (12)

the presence in the proceeding of non-debtor parties. *Stabler v. Beyers (In re*

*Stabler)*, 418 B.R. 764, 769 (B.A.P. 8th Cir. 2009) (citing *Williams*, 256 B.R. at 893-

94 and *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993) ("Courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative.")). The following analysis of each of the twelve factors demonstrates that eleven of the twelve factors weigh against permissive abstention. The only remaining factor is neutral.

> **1.    The Administration of the Bankruptcy Estates of AFY and Korley May Be Significantly Affected if the Court Recommends Abstention.**

There is no way to predict what outcome may result from litigating the Complaint in state court. Initially, Defendants will seek to have the lawsuit dismissed for the same reasons that they moved to dismiss this case. *See* (Docs. 4 & 8). However, familiarizing a state court judge that is completely unfamiliar with the protracted litigation that has taken place in the Bankruptcy Court and other federal courts will take time, more time than what would be required in a court that is already semi- or fully familiar with the relevant litigation history. In the event that the Complaint is not dismissed, and Plaintiffs' claims somehow move forward to the discovery stage and trial, there is a substantial risk that the administration of the AFY bankruptcy estate and Korley's bankruptcy estate will be affected because any order in favor of Plaintiffs would undo the administration of the AFY bankruptcy estate.

Plaintiffs' claims have been rejected time and time again in this Bankruptcy Court and other federal courts. A remand will result in the same factual allegations and arguments being heard again, this time in a different forum, creating the possibility of inconsistent results. Courts have rejected requests to permissively abstain and remand when there is a possibility of inconsistent results. *In re Civic Partners Sioux City, LLC*, Case No. 11-00829, 2012 WL 761361, *14 (Bankr. N.D. Iowa March 8, 2012) (citing *CRD Sales & Leasing, Inc.,* 231 B.R. 214, 220-21

25

(Bankr. D. Vt. 1999)).   As noted in *Civic Partners*, inconsistent results may cause difficulty in the administration of the underlying bankruptcy case.  *Id.*

Here, remand will result in the danger of inconsistent results.  By way of example, if the state court were to find that Defendants abused the bankruptcy process and must repay the AFY estate millions of dollars in distributions that they already received pursuant to the Bankruptcy Court's approval, that inconsistent result would have a significant effect on the AFY Bankruptcy and would undermine federal court authority.  Similarly, if the state court were to find that the Bankruptcy Court and BAP were incorrect when they determined that AFY is not liable under the Stock Sale Agreement, that inconsistent ruling would have a significant effect on the AFY Bankruptcy and would undermine federal court authority.  Because there is a significant risk of affecting the administration of the AFY Bankruptcy and Korley Bankruptcy, this first factor weighs heavily against permissive abstention.

### 2.   Because Bankruptcy Issues Predominate Over State Law Issues, This Factor Weighs Heavily Against Remand.

Although Plaintiffs have labeled their claims as state law claims, bankruptcy issues have a significant place in the Complaint, which asks a state court to find Defendants liable for state law claims based solely on their conduct in the Bankruptcy Cases.   Whether Defendants' conduct in the Bankruptcy Cases was proper is the overarching issue presented by the Complaint and the determination of that issue will require the conduct to be analyzed under bankruptcy law, not state law.  Because resolution of the claims involves a significant analysis of bankruptcy law, this factor weighs heavily against permissive abstention.

### 3   Because No Novel State Law Issues Exist and the Predominance of Bankruptcy Law Over State Law, This Factor Weighs Against Abstention.

This factor weighs against abstention because of the implication of bankruptcy law and no novel state law issues.   No novel state law issue exists and the

26

predominant issues involved relate to what occurred in the bankruptcy, including whether Defendants abused the bankruptcy process.

### 4. Because No Related Proceeding in State Court or in Any Other Non-bankruptcy Court Exists, This Factor Weighs Against Abstention.

There is no related proceeding in state court or other nonbankruptcy court. Therefore, this factor weighs against permissive abstention.

### 5. Because Federal Question Jurisdiction Exists and, Accordingly, this Court Has Jurisdiction Other Than 28 U.S.C. § 1334, This Factor Weighs Against Abstention.

In this matter, there is no diversity jurisdiction under 28 U.S.C. § 1332. Nevertheless, there are grounds for federal question jurisdiction under 28 U.S.C. § 1331, and accordingly, this factor weighs against abstention.

Federal question jurisdiction exists when a plaintiff's complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *McNeill v. Franke*, 171 F.3d 561, 563 (8th Cir. 1999) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)).  When state law creates the cause of action, original federal jurisdiction is available if it appears that a substantial, disputed question of federal law is a necessary element of one of the state claims.  *Id.* (quoting *Franchise Tax*, 463 U.S. at 13).

Here, one of the claims in the Complaint is abuse of process.  As part of the abuse of process claim, Plaintiffs allege that "[c]ontrary to the Bankruptcy Code, Rhett, Ron and Dane with malice claimed to be creditors of AFY," obtained the appointment of the AFY Trustee, and that they "with malice and in bad faith" caused the AFY Trustee to "ignore whether AFY was able to reorganize a Chapter 11 plan and orchestrated . . . a conversion into a de facto Chapter 7 case."  (Doc. 1, Ex. A, ¶¶ 80-81).  Plaintiffs claim that the AFY Trustee, "at the behest of Rhett, Ron and

27

Dane, violated his statutory duties under the Bankruptcy Code and violated rules of procedure." (*Id.*, ¶ 83).

Under Nebraska law, to prove an abuse of process claim, Plaintiffs must prove the existence of an ulterior purpose and an act in the use of the process not proper in the regular prosecution of the proceeding. *Gordon v. First Community State Bank*, 587 N.W.2d 343, 351 (Neb. 1998). Therefore, Plaintiffs must prove that Defendants took steps in the AFY Bankruptcy that were "not proper in the regular prosecution of the proceeding." *See id.* The abuse of process claim therefore raises the following issues: (a) whether Defendants acted properly in filing the AFY Proofs of Claim, (b) whether the AFY Proofs of Claim should have been allowed, and (c) whether Defendants acted properly in filing the Motion to Appoint a Trustee, in supporting the conversion to Chapter 7, and in accepting Bankruptcy Court-approved distributions from the AFY bankruptcy estate. All of these issues depend on the resolution of substantial questions of bankruptcy law. *See McNeill*, 171 F.3d at 563-64 (stating if a right to relief under state law requires resolution of a substantial question of federal law, federal question jurisdiction exists). Grounds for federal question jurisdiction under § 1331 therefore exist and supplemental jurisdiction may be exercised over the remaining claims in the Complaint.

### 6.   Because the Claims in the Complaint Are Inextricably Intertwined with the Bankruptcy Cases, This Factor Weighs Against Remand.

This factor weighs against permissive abstention because the claims in the Complaint are primarily related to the AFY Bankruptcy and are also related to Korley's Bankruptcy. There is a high degree of relatedness, as the factual allegations are centered on Defendants' conduct in the AFY Bankruptcy. The claims are not remote but are based solely conduct taken by Defendants in the Bankruptcy Cases.

7. **Because the Substance of Plaintiffs' Complaint, Opposed to the Labels Given Therein, Demonstrate that Plaintiffs' Claims Involve Core Proceedings, This Factor Weighs Against Abstention.**

As described in more detail above, the Plaintiffs' claims present core proceedings that are centered on Defendants' conduct in the AFY Bankruptcy, and the Complaint was filed as a way to collaterally attack orders entered in a series of core proceedings. *See* (Argument Section I, *supra*). Thus, this factor weighs against permissive abstention.

8. **Because It Is Not Feasible to Sever the State Law Claims from the Core Bankruptcy Matters, This Factor Weighs Against Abstention.**

It would not be feasible to sever any of the claims.

9. **Because of the Relatively Light Volume of Bankruptcy Cases at Present, the Burden on the Bankruptcy Court's Docket Would Not Be Significant, and Accordingly, This Factor Weighs Against Abstention.**

Defendants recognize that the Bankruptcy Court has been burdened with Plaintiffs' frivolous arguments for years, but this factor does not appear to weigh in favor of or against permissive abstention because this case does not impose a significant burden on the Bankruptcy Court's relatively light docket at present.

10. **Because Plaintiffs Clearly Are Forum Shopping, This Factor Weighs Against Abstention.**

The filing of the Complaint in state court is a straightforward and obvious attempt to forum shop by Plaintiffs. Courts view forum shopping with disfavor when analyzing permissive abstention. As an example, in *In re Stabler*, 418 B.R. 764 (8th Cir. B.A.P. 2009), the parties were engaged in litigation in state court for almost two years. *Id.* at 767. The debtors then filed an adversary complaint in bankruptcy court, alleging that the defendant's state-court counterclaims violated the debtors' previous bankruptcy discharge. *Id.* The defendant moved to dismiss the adversary proceeding, or, in the alternative, for the bankruptcy court to permissively abstain under § 1334(c)(1). *Id.* at 768. The bankruptcy court abstained under § 1334(c)(1)

and the BAP affirmed the bankruptcy court's decision. *Id.* at 766. The BAP reviewed the relevant abstention factors and found that the factor of forum shopping "deserves particular note because of how apparent and egregious it is that the [d]ebtors were forum shopping." *Id.* at 770. The debtors had been engaged in state court litigation for almost two years. *Id.* When the state court ruled against them, they filed the adversary complaint in bankruptcy court. *Id.* "To permit the [d]ebtors to proceed with their adversary complaint in bankruptcy court would condone their blatant attempt to circumvent the the decision of the state court . . . and secure a different or better result" in the bankruptcy court. *Id.* (internal quotations omitted).

In this case, the parties have been litigating the issues set forth in the state court Complaint since 2010. (Doc. 14). Plaintiffs only filed the state court Complaint after a series of defeats in the Bankruptcy Court and other federal courts spanning several years. Plaintiffs' forum shopping is "apparent and egregious" and to permit the Plaintiffs to pursue their claims in state court "would condone their blatant attempt to circumvent" the decisions of federal courts in the hope of securing "different or better result" in state court. *See Stabler*, 418 B.R. at 770. Based on Plaintiffs' forum shopping, their choice of forum is entitled to no deference whatsoever and instead, the reverse is true: their forum shopping weighs in favor of keeping the state court Complaint in federal court. *See also In re Kesar Enterprises, Inc.*, 330 B.R. 756, 764 (Bankr. W.D. Mo. 2005) (finding that the commencement of the adversary proceeding in bankruptcy court by the debtor was premised on the debtor's dissatisfaction with the way the ongoing state court litigation was heading, and therefore, the factor of forum shopping weighed "heavily" on the bankruptcy court's abstention decision); *Civic Partners*, 2012 WL 761361 at *13 (citing forum shopping as one factor weighing against abstention).

**11.    Because Plaintiffs Do Not Have a Right to a Jury Trial, This Factor Weighs Against Abstention.**

Plaintiffs have demanded a jury trial.  (Doc. 14, p. 3).  However, the law does not support providing them with one.  A bankruptcy debtor is not entitled to a jury when the debtor's causes of action are related to the claims-allowance process or affect the hierarchical reordering of creditors' claims.  *In re Charlotte Commercial Group, Inc.*, 288 B.R. 715, 719-20 (Bankr. M.D.N.C. 2003) (collecting cases in which it was held that bankruptcy debtors did not have the right to a jury trial).

Here, Defendants' claims have already been litigated in the context of allowing Defendants' AFY Proofs of Claim and Korley Proofs of Claim.  The claims are "integrally related" and "patently related" to Defendants' proofs of claim and the resolution of the causes action cannot be decided without also affecting the ordering of proofs of claim in Korley's Bankruptcy and the AFY Bankruptcy.  *See Charlotte Commercial*, 288 B.R. at 719-20.  In fact, Plaintiffs are asking that distributions be undone.  The claims are "inescapably intertwined" with the allowance of the AFY and Korley Proofs of Claim and therefore Korley and Robert do not have a right to a jury trial.  *See In re Auto Imports, Inc.*, 162 B.R. 70, 72 (Bankr. D.N.H. 1993).

**12.    Because the Non-Debtor Parties in the Proceeding Consent to the Jurisdiction of the Bankruptcy Court, This Factor Does Not Weigh in Favor of Abstention.**

As the foregoing illustrates, when analyzed one by one, all but one of the factors weigh against permissive abstention.  The remaining factor is neutral.  No factors support permissive abstention.

**III.    EQUITABLE REMAND UNDER 28 U.S.C. § 1452(B) IS NOT WARRANTED.**

A federal court to which a claim is removed "may remand such claim on any equitable ground."  28 U.S.C. § 1452(b).  The analysis to determine whether equitable remand under § 1452(b) is appropriate "is virtually identical to the permissive abstention analysis."  (Doc. 14, p. 3).  The following four additional

factors are considered when determining whether equitable remand is warranted:

>   (1)  whether remand serves principles of judicial economy;
>
>   (2)  whether there is prejudice to unremoved parties;
>
>   (3)  whether the remand lessens the possibilities of inconsistent results; and
>
>   (4)  whether the court where the action is pending has greater expertise.

*Farmers Bank & Trust Co. v. Chicksaw Prop., LLC (In re Burrow)*, 505 B.R. 838,

849-50 (Bankr. E.D. Ark. 2013) (citations omitted).

Each of these four additional factors weighs against remand.  First, remand does not serve the principles of judicial economy.  This Bankruptcy Court is knowledgeable and familiar with Plaintiffs' protracted litigation efforts, the allegations made in the Complaint, and the Bankruptcy Cases in general.  In contrast, a state court does not have any knowledge or familiarity with any of the Complaint's allegations or the Bankruptcy Cases.  Second, there are no unremoved parties and therefore no prejudice to be suffered by them.  Third, remand does not lessen the possibility of inconsistent results, but instead, only heightens that danger.  Fourth, the state court does not have greater expertise regarding Plaintiffs' allegations and claims.  The allegations are based solely on Defendants' conduct in federal court over a period of years.  The state law issues implicated by the Complaint are not complex, but are the type that federal courts routinely encounter and involve matters particular to bankruptcy law, to which state courts are much less adept.  A federal court is in the best position to rule on the claims in Plaintiffs' Complaint.

## CONCLUSION

Plaintiffs filed the state court Complaint after years of unsuccessfully making the same arguments in the Bankruptcy Court and other federal courts.  There are no new allegations in the state court Complaint, but instead, the claims repeat arguments that already have been made in, and rejected by, federal courts.  The

state court Complaint is a blatant and transparent attempt by Plaintiffs to collaterally attack the federal court orders, with the hope of obtaining a different result.  Because the claims in the Complaint are entirely predicated on Defendants' conduct in the Bankruptcy Cases and would have no existence but for the Bankruptcy Cases, such claims are "arising in" title 11 pursuant to § 1334(b).  Moreover, despite the state-law labels Plaintiffs have given their claims, the claims are core proceedings because they are based on post-petition conduct of the Defendants.  Further, fifteen of the sixteen factors to be considered in determining whether permissive abstention or equitable remand is appropriate weigh against abstention or equitable remand.  A federal court familiar with bankruptcy issues and process is in the best position to decide the Plaintiffs' claims, as the claims involve significant questions of bankruptcy law and process and are based on years of federal litigation, and remand raises a significant risk of inconsistent results.  For all of the foregoing reasons, Defendants respectfully request that this Bankruptcy Court deny the Motion to Abstain.

DATED this 22nd day of October, 2015.

RHETT R. SEARS, RHETT R. SEARS
REVOCABLE TRUST, RON H. SEARS
TRUST, RONALD H. SEARS, AND
DANE R. SEARS, Defendants,


By:  *s/ Kristin M.V. Krueger*

Donald L. Swanson, #16385
Brian J. Koenig, #23807
Kristin M.V. Krueger, #23919
KOLEY JESSEN P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE  68124-1079
(402) 390-9500
(402) 390-9005 (facsimile)
Don.Swanson@koleyjessen.com
Brian.Koenig@koleyjessen.com
Kristin.Krueger@koleyjessen.com

Attorneys for Defendants.

33

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2015, I electronically filed the foregoing with the Clerk of the U. S Bankruptcy Court by using the CM/ECF system which sent notice of electronic filing to all counsel.


_s/ Kristin M.V. Krueger_

4833-5967-8761.3